UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: WILLIE GIBBONS, et al., | : | Hon. Joseph H. Rodriguez |
| Plaintiffs, | : | Civil Action No. 13-3530 |
| v. | : | **OPINION** |
| NEW JERSEY STATE POLICE, SERGEANT JAMES MCGOWAN, STATE TROOPER NOAH BARTLETT, STATE TROOPER PHILLIP CONZA, STATE TROOPER MICHAEL KORIEJKO, STATE TROOPER DANIEL HIDDER, in their individual and official capacities, et al., | : : : : : : | |
| Defendants. | : | |

This matter has come before the Court on motion of Defendants for partial dismissal of the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Oral argument on the motion was heard on November 19, 2015 and the record of that proceeding is incorporated here. For the reasons set forth below, and those discussed during oral argument, Defendants' motion will be granted in part and denied in part.

## Jurisdiction

This matter was removed to this Court from the Superior Court of New Jersey, Law Division, Cumberland County. It is a civil action over

1

which the district court has original jurisdiction based on a question "arising under the Constitution, laws, or treaties of the United States." <u>See</u> 28 U.S.C. § 1331. Here, Plaintiffs assert a violation of civil rights pursuant to 42 U.S.C. § 1983. With respect to Plaintiffs' state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

## **Background**

The matter arises out of the fatal police shooting in Bridgeton, New Jersey of Willie Gibbons, an African-American male diagnosed with schizophrenia. Plaintiffs are Arlane James, Gibbons' mother; JRG, Gibbons' 12-year-old son, by his mother and guardian Ikeya Crawford; DKL, Gibbons' 12-year-old son, by his mother and guardian Angel Stephens; and LMG, Gibbons' 10 year-old daughter, by her mother and guardian Angel Stephens. Defendants are the New Jersey State Police, State Trooper Noah Bartlett, State Trooper Daniel Hidder, State Trooper Phillip Conza, State Trooper Michael Koriejko, Sergeant James McGowan, in their individual and official capacities, and John Does 1-10.

According to the Second Amended Complaint, Gibbons lived with Stephens and her mother in Bridgeton, New Jersey. On or about Tuesday evening, May 24, 2011, Gibbons and Stephens had an argument regarding

2

Gibbons' medication.   Stephens called 9-1-1.   State Police Officers from Troop A responded, took Gibbons in for questioning, and searched his vehicle and Stephens' home for weapons.   They did not find any weapon on Gibbons' person or in his vehicle.   During his interrogation, Gibbons advised the officers of his <u>Kroll</u> status, told the officers he felt he was being harassed, and asked to file a complaint.   Gibbons completed a complaint form and turned it in to Defendant Conza.   In the early hours of Wednesday morning, Gibbons was released from the police barracks with a restraining order preventing him from contact with Stephens.   Gibbons then stayed at a motel.

On Wednesday, May 25, 2011, Gibbons went to his sister's house where his mother lived.   Plaintiffs allege that police cars drove past the house several times throughout the day.   In addition, Gibbons believed that the police also followed him to a local store.   Plaintiffs learned that troopers were briefed at the start of their shift that Gibbons had lodged a complaint against the officers of Troop A for harassment.

That Wednesday evening at approximately 8:00 p.m., following advice from an officer of Troop A, Gibbons called for a police escort to retrieve some items from Stephens' house.   No police help was provided,

3

but Defendant Koriejko informed Gibbons he would have to make an appointment with the troopers. Gibbons went to Stephens' house, but ended up leaving without his possessions to avoid a confrontation.

The same night, Wednesday, May 25, 2011, troopers were called regarding a domestic dispute at Stephens' house. Stephens observed Gibbons walking toward the barracks on North Burlington Road miles from her house, and informed the police dispatcher who broadcast the information that Gibbons was on foot walking toward the barracks.

At approximately 9:09 p.m., the Defendant troopers allegedly encountered Gibbons walking on the road towards the police barracks and shot him twice in the abdomen, later asserting their belief that Gibbons had a gun. Plaintiffs allege that the troopers waited fifteen minutes or more to call paramedics. When the paramedics arrived, they could not treat Gibbons immediately because he was handcuffed from behind and had a stomach wound. The troopers allegedly insisted that he be handcuffed in the front before treatment even though he was in a comatose state. A gun was secured, but the scene allegedly was not. Defendant Bartlett allegedly acknowledged that Gibbons had the gun pointed at his own temple. Gibbons was pronounced dead at 1:28 a.m. on Thursday, May 26, 2011.

4

The Second Amended Complaint asserts the following claims: (1) Defendants violated the NJLAD in shooting Gibbons because of his race (also lack of training to deal with African-Americans has led to custom and history of harassment); (2) Defendants violated the NJLAD in shooting Gibbons and delaying his emergency medical care because of his known disability –schizophrenia (also lack of training); (3) Defendants violated Gibbons' equal protection rights under the New Jersey Constitution in shooting him because of his race; (4) Gibbons' equal rights were violated under 42 U.S.C. § 1981 and the New Jersey Constitution when Defendants shot him because of his race and/or disability; (5) a claim under 42 U.S.C. § 1983 for violation of Gibbons' civil rights due to his race and/or disability, including a custom and practice under Defendant McGowan of treating Blacks as second class citizens; (6) excessive force violative of the 4th Amendment; (7) discrimination in a place of public accommodation in violation of Title II of the Civil Rights Act of 1964 and the NJLAD because Gibbons was shot in the street, a place of public accommodation; (8) violation of the Americans with Disabilities Act by the troopers; (9) a Rehabilitation Act violation by the New Jersey State Police and the State of New Jersey because Gibbons was denied police protection/service to

accommodate his disability; (10) retaliation for lodging a complaint of harassment; (11) conspiracy in violation of 42 U.S.C. § 1985(3); (12) cruel and unusual punishment in violation of the Eighth Amendment in withholding medical attention.

## **Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim.  Fed. R. Civ. P. 12(b)(6).  When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.[1]  See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).  It is not necessary for the plaintiff to plead evidence.  Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977).  The question before the Court is not whether the plaintiff

---

[1] "Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."  U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted).

will ultimately prevail.  Watson v. Abington Twp., 478 F.3d 144, 150 (2007).  Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[2]  when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness."  Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006)

---

[2]This plausibility standard requires more than a mere possibility that unlawful conduct has occurred.   "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id.

7

(citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). Accord Iqbal, 556 U.S. at 678-80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth). Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 555 (internal citations omitted). See also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'- 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

8

## Discussion

### 42 U.S.C. § 1983

Plaintiff's Constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution.   See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983.

As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws.   See Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979).   By its own words, therefore, Section 1983 "does not . . . create substantive rights."   Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Baker, 443 U.S. at 145, n.3).

9

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that plaintiff was deprived of his rights by a person acting under the color of state law. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 464 (3d Cir. 1989).

**Fourth Amendment**

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and persons or things to be seized.

A Fourth Amendment excessive force claim calls for an evaluation of whether police officers' actions are objectively reasonable in light of the facts and circumstances confronting him. Graham v. Conner, 490 U.S. 386, 397 (1989). While the question of reasonableness is objective, the

court may consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight.   Id.   In a claim for excessive force, "the central question is 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

Furthermore, appropriate attention should be given "to the circumstances of the police action, which are often 'tense, uncertain, and rapidly evolving.'" Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995) (quoting Graham, 490 U.S. at 396).   See also Graham, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary," violates the constitution.).

The Eleventh Amendment to the Constitution guarantees the States' immunity from certain claims: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."   U.S. Const. Amend. XI.   As such, the Eleventh Amendment has long been held to incorporate a more

11

general principle of sovereign immunity that bars citizens from bringing suits for damages against any state in federal court.  <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 100-01 (1984).   Monetary claims for deprivations of civil rights are subject to the sovereign immunity bar, as the United States Supreme Court has held that "neither a State nor its officials acting under their official capacities are 'persons' under § 1983." <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989).   As such, an employee of the State named as a defendant in a civil rights action may be held liable for damages only if that person has personal involvement in the alleged wrongs and is sued in their personal capacity.   <u>See</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 31 (1991) ("state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983").

**<u>Analysis</u>**

Here, the defense does not challenge Plaintiffs' claim brought under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment, except to argue that such claim against the State, State Police, and troopers named in their official capacities should be dismissed.   The State of New Jersey, New Jersey State Police and the individually-named troopers in their official capacities are not "persons" for purposes of § 1983 and they have not consented to suit.   Therefore, the claims against them for

damages will be dismissed.   Insofar as the Second Amended Complaint requests injunctive relief, those claims survive.

These claims are outlined in Counts Five and Six of the Second Amended Complaint, and may incorporate the facts included in Count Twelve regarding Defendants withholding medical attention at the scene of the shooting.   The Court finds that Plaintiffs may fully advance their case under these claims, but the legal theories advanced in the remainder of the Second Amended Complaint are not plausibly based in the facts alleged.

Regarding the first two claims, that Defendants violated the NJLAD in shooting Gibbons because of his race and his known disability – schizophrenia, Plaintiffs have failed to state facts showing that deadly force was used against Gibbons on account of his race and/or disability.   The Court acknowledges that the NJLAD makes it unlawful to subject people to differential treatment based on race and mental or physical disability. N.J. Stat. Ann. § 10:5-12.   However, unsupported conclusions and unwarranted inferences do not establish sufficient facts to state a claim for relief that is plausible on its face.   See Twombly, 550 U.S. 544, 570 (2007).   Similarly, the claims that Defendants violated Gibbons' equal protection rights under the New Jersey Constitution in shooting him because of his race and that Gibbons' equal rights were violated under 42 U.S.C. § 1981 and the New

13

Jersey Constitution when Defendants shot him because of his race and/or disability find no basis in the facts alleged.

Next, the Court has considered the claim discrimination in a place of public accommodation in violation of Title II of the Civil Rights Act of 1964 and the NJLAD because Gibbons was shot in the street, a place of public accommodation.   Title II of the Civil Rights Act of 1964 guarantees equal access to public places without discrimination or segregation on the ground of race, color, religion, or national origin.   42 U.S.C. § 2000a.   N.J. Stat. Ann. § 10:5-4 guarantees all persons the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation, without discrimination on the basis of, among other things, race.   Turner v. Wong, 832 A.2d 340 (N.J. Super. Ct. App. Div. 2003). The fact that Gibbons was shot while on the street, a place of public accommodation, does not state a claim under these provisions.

Through claims of violation of the Americans with Disabilities Act and the Rehabilitation Act, including the allegation that Gibbons was denied police protection/service to accommodate his disability, Plaintiffs assert the same conclusions from the previous complaint, dismissed by the Court for failure to state a claim. The Second Amended Complaint fails to provide additional facts regarding causation to rehabilitate these claims.

14

Regarding the allegation that Plaintiff was shot, at least in part, in retaliation for lodging a complaint of harassment earlier in the day, the Court finds that this circumstance may be expanded upon in the excessive force claim that survives this motion.   The facts as alleged do not support an independent claim that deadly force was used in retaliation for Gibbons filing a complaint.

Again, Plaintiffs have alleged a conspiracy in violation of 42 U.S.C. § 1985(3).   Section 1985(3) creates a private right of action against persons who conspire "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1983(3) (1994). A Section 1985(3) conspiracy claim must be pled with factual specificity. Robinson v. McCorkle, 462 F.2d 111, 113-14 (3d Cir. 1972).   To establish a claim under Section 1985(3), plaintiffs must plead the following elements: (1) a conspiracy; (2) for the purpose of depriving any person or class of person of equal protection of the laws or equal privileges and immunities; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.   United Bhd. Of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 828-29 (1983).

Here, Plaintiffs have failed to allege facts to support a conspiracy theory. At best, Plaintiffs assert that there were four troop cars on the scene of the stop, but no radio or other recording device was activated. In addition, "the gun" was entrusted to Bartlett, the shooter, to secure. These allegations are insufficient to state a claim that the Defendants engaged in a conspiracy.

Finally, Plaintiffs seem to acknowledge that the claim of cruel and unusual punishment in violation of the Eighth Amendment in withholding medical attention was inartfully pled, but stand by the facts asserted. At this stage of the litigation, as stated above, the Court will allow the facts regarding delay of medical attention to proceed with the case.

## Conclusion

In summary, the Court finds that Plaintiffs have sufficiently pled a case under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment, withholding medical treatment in violation of the Fourteenth Amendment, a custom and practice of treating persons of certain races or with mental disabilities in a manner violative of their civil rights and/or a failure to train officers to properly handle situations involving those citizens (only insofar as this claim seeks injunctive relief). All other claims are dismissed.

For the reasons set forth here, the motion of Defendants [36] for partial dismissal of the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted in part and denied in part.   An appropriate Order will be filed.


Dated: December 1, 2015                              /s/ Joseph H. Rodriguez
                                                                          JOSEPH H. RODRIGUEZ
                                                                                       U.S.D.J.